# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LARRY HAMILTON | * | |
| Plaintiff | * | |
| v | * | Civil Action No. RDB-18-2851 |
| WASHINGTON CO. DET. CTR., | * | |
| CAPT. E. LONG, | | |
| WARDEN C. ROWE, | * | |
| MERITUS MEDICAL STAFF | | |
|   CORRECT SOLUTIONS, | * | |
| SHERIFF DOUG MULLENDORE, | | |
| WASHINGTON CO. SHERRIFF'S DEPT., | * | |
| WASHINGTON CO. BD. OF COMMISSIONERS, | | |
| Defendants | * | |

\*\*\*

## **MEMORANDUM OPINION**

In response to this civil rights complaint Defendants Long, Rowe, Mullendore, Washington County Board of Commissioners, Washington County Detention Center, and Washington County Sheriff's Department move to dismiss or for summary judgment in their favor. ECF 13.[1] Self-represented Plaintiff Larry Hamilton was notified of his right to file an Opposition Response and of the consequences of failing to do so (ECF 16), but has not opposed the motion. No hearing is necessary for the disposition of the matters pending before the Court. *See* Local Rule 105.6 (D. Md. 2018). For the reasons that follow, Defendants' motion, construed as one for summary judgment, shall be granted.

---

[1] Defendants have also filed a Motion to Seal certain records submitted in support of the dispositive motion. ECF 14. Because the records concern private information regarding Plaintiff's medical conditions, the motion shall be granted.

## BACKGROUND

A.     <u>Complaint Allegations</u> (ECF 1 and ECF 4 (supplemental complaint))[2]

At the time he filed this complaint Hamilton was an inmate at the Washington County Detention Center (WCDC). He claims that at the time of his arrival, August 7, 2018 (*see* ECF 4 at p. 3), he was seen by medical staff employed by Correct Care Solutions and he informed them that he had undergone reconstructive knee surgery in 2012; that he takes "Zantac 150" to treat a stomach ulcer; and that he cannot tolerate milk. ECF 1 at p. 3. He explains that he was in a car accident in December 2017, during which he sustained a back injury and re-injured his knee. *Id.* Hamilton claims that the information he provided to medical staff was ignored and he was assigned to a cell on the top tier and assigned to a top bunk. *Id.*

On August 25, 2018, Hamilton filed a grievance concerning the medical staff because his numerous attempts to get his cell assignment changed to a lower tier and lower bunk were unsuccessful. ECF 4 at p. 4. He claims that an ear infection he sustained made it more difficult to get down from the top bunk and that he told both detention center staff and medical staff about his difficulty. *Id.*

On September 5, 2018, while coming down from the top bunk, Hamilton asserts he became dizzy and his knee popped in and out of place. ECF 1 at p. 5. As a result, Hamilton fell to the floor, striking his face on the desktop in the cell and cracking a tooth in half. *Id.* When Hamilton was seen for his injury the next day, he claims he received Motrin, but did not have x-rays or other tests performed, nor did he see a dentist. *Id., see also* ECF 4 at pp. 4 & 6.

On September 6, 2018, Hamilton received a response for the grievance he filed, but claims "there has not been a remedy." ECF 1 at p. 5.

---

[2]     Hamilton also filed a "Motion to Compel Complaint" (ECF 9) which appears to be an amended complaint that does not alter the allegations raised in ECF 1 and 4. The motion shall therefore be denied as moot.

Hamilton claims that on September 9, 2018, he asked to see a medical provider because his blood pressure was between 98/120 and 104/160. ECF 4 at p. 5. Despite asking to be seen three days in a row, Hamilton claims he was "maliciously refused" each day causing him "mental anguish and emotional distress." *Id.* Hamilton adds that despite his reported problems, he remained assigned to the top tier and top bunk. ECF 1 at p. 5.

Hamilton adds that since August 8, 2018, he has been "negligently subjected to taking showers in mold," was denied meals on two occasions as a form of punishment, and had his diet changed by non-medical staff. *Id.* at p. 6. Hamilton clarifies his claim regarding meals and states that he was "maliciously" removed from the "lactose diet" as a form of punishment and was forced to eat under threat of being put "in the butt naked room." ECF 4 at pp. 6, 7. He states that his tooth remains cracked and has not yet been seen by a dentist. ECF 1 at p. 6. He further claims that he was "never given ice" for his "swollen hand," nor was he seen by medical staff for his swollen knee. ECF 4 at p. 6. Hamilton claims that all of the noted conduct and conditions constitute negligence and deliberate indifference. He seeks compensatory damages; an order requiring his treatment by specialists for his ear, knee and for headaches; and an award of 5 million dollars "to build a better Medical Dept." ECF 1 at p. 7.

B.  Defendants' Response (ECF 13 (motion), ECF 15 (sealed medical records))

Hamilton was detained in WCDC on August 8, 2018, on charges of first and second degree assault and theft. *See* ECF 13-3 (docket for *State of Maryland v. Hamilton*, Case C-21-CR-18-724 (Wash. Co. Cir. Ct.)). Defendants provide a copy of Warden Long's response to Hamilton's September 6, 2018, in which he complained about a swollen knee and back and lack of access to Zantac. ECF 13-4. The response includes a report to Warden Long from the Health Services Administrator who stated:

3

> Hamilton did not indicate knee surgery or back injury during his medical intake. He complained of his right hand hurting. During his physical examination, the hand was noted to be swollen and painful. An x-ray was done and the x-ray was negative. During the physical exam the knee and back were negative for any deformities. His knee surgery is over 5 years old and does not warrant a lower bunk or lower tier at this time. He placed a sick call request today c/o knee pain after falling off his bunk. He will be seen on nurse sick call within the next 24 to 48 hours per protocol for this.
>
> As for the Zantac, he did not indicate ulcers and denied taking any medications prescribed by a physician. We have obtained health records and nothing has confirmed the diagnosis of ulcers that he states. Zantac is non-formulary and a diagnosis must be verified before approval is attempted. He has been ordered Tums twice a day.

ECF 13-4 at p. 2. Based on this assessment, Warden Long did not require action to be taken in response to Hamilton's complaint. *Id.*

During his initial Mental Health Screening Hamilton reported a history of hypertension, lactose intolerance, an allergy to oranges, and asthma. ECF 15 at pp. 1-2. There is no indication that he reported a history of knee surgery or sustaining a back injury in a recent car accident as he alleged in his complaint. *Id.* When medical staff attempted to verify Hamilton's reported food allergies through records from the University of Maryland, midtown campus, where he had received treatment, it was discovered that he had "no known allergies." ECF 15-3 at p. 2. The food allergies listed for Hamilton based on his self-report were therefore deleted from his record. *Id.*

Hamilton's high blood pressure (hypertension) was treated with Lisinopril,[3] prescribed for him on September 26, 2018, and Amlodipine,[4] prescribed on a "stat" basis on September 29, 2018.

---

[3] Lisinopril is an ACE inhibitor and is used to treat high blood pressure. *See* https://www.drugs.com (last visited April 25, 2019).

[4] Amlodipine is a calcium channel blocker that dilates (widens) blood vessels and improves blood flow. It is used to treat ches pain and other conditions caused by coronary artery disease. *See* https://www.drugs.com (last visited April 25, 2019).

ECF 15-4 at pp. 2-3 (medication chart). In addition, Hamilton was given Mapap[5] on a "stat" basis the day he arrived at WCDC. *Id.* at p. 1. Thereafter, Hamilton received Ibuprofen, Acetaminophen and Meloxicam, all medications to address pain. *Id.* Also noted on his medication chart is administration of ear drops coinciding with his claim that he contracted an ear infection. *Id.* at p. 2, *see also* ECF 15-2 at p. 1 (Sept. 14, 2018 medical sick call noting ear infection treated with antibiotics and ear drops).

Hamilton complained of a skin rash on September 26, 2018, which he reported was worsened by "moldy water." ECF 15-2 at p. 1. He was prescribed hydrocortisone for the rash and, to address his other complaints concerning chronic knee pain, dental and jaw pain, as well as his expressed need for regular blood pressure checks, Hamilton's dosage for Lisinopril was increased and he was placed on the list to be seen by the dentist. *Id.* The examination of Hamilton's mouth did not reveal any evidence of infection; it was noted that the problem tooth was a left rear molar. *Id.* Hamilton was also prescribed Ibuprofen for his fractured molar. *Id.* at p. 2.

## STANDARD OF REVIEW

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

---

[5] Mapap is a form of acetaminophen used to treat conditions such as headache, muscle aches, arthritis, backache, toothaches, colds, and fevers. *See* https://www.drugs.com (last visited April 25, 2019).

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## ANALYSIS

### A. Fourteenth Amendment Claim

Liberally construed, Hamilton's complaint alleges a denial of medical care in violation of his Fourteenth Amendment rights. ECF 1, ECF 4. "The constitutional protections afforded a pretrial detainee as provided by the Fourteenth Amendment are co-extensive with those provided by the Eighth Amendment." *Barnes v. Wilson*, 110 F.Supp.3d 624, 629 (D. Md. 2015) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). "Pretrial detainees are entitled to at least the same protection under the Fourteenth Amendment as are convicted prisoners under the Eighth Amendment." *Young v. City of Mt. Ranier*, 238 F.3d 567, 575 (4th Cir. 2001) (citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 243-44 (1983); *Hill v. Nicodemus*, 979 F.2d 987, 991-92 (4th Cir. 1992)). Thus, deliberate indifference to the serious medical needs of a pretrial detainee violates the Due

Process Clause. *Id.* (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998) (concluding that, because it is sufficient for liability under the 8th Amendment, "deliberately indifferent conduct must also be enough to satisfy the fault requirement for due process claims based on the medical needs of someone jailed while awaiting trial"); *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir.1999) (applying deliberate indifference standard to pretrial detainee's claim that he was denied needed medical treatment), *cert. denied*, 529 U.S. 1067 (2000); *Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir.1990) ("The Fourteenth Amendment right of pretrial detainees, like the Eighth Amendment right of convicted prisoners, requires that government officials not be deliberately indifferent to any serious medical needs of the detainee.")).

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure it was available. *See Farmer v. Brennan*, 511 U.S. 825, 834-37 (1994); *see also Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209-10 (4th Cir. 2017); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). "A 'serious medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Heyer*, 849 F.3d at 210 (quoting *Iko*, 535 F.3d at 241); *see also Scinto v. Stansberry*, 841 F.3d 219, 228 (4th Cir. 2016) (failure to provide diabetic inmate with insulin where physician acknowledged it was required is evidence of objectively serious

7

medical need). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839-40; *see also Anderson v. Kingsley*, 877 F.3d 539, 544 (4th Cir. 2017). Under this standard, "the prison official must have both 'subjectively recognized a substantial risk of harm' and 'subjectively recognized that his[/her] actions were inappropriate in light of that risk.'" *Anderson*, 877 F.3d at 545 (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004)); *see also Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997) ("True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference because 'prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). The subjective knowledge requirement can be met through direct evidence of actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Scinto*, 841 F.3d at 226 (quoting *Farmer*, 511 U.S. at 842). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844; *see also Cox v. Quinn*, 828 F.3d 227, 236 (4th Cir. 2016) ("[A] prison official's response to a known threat to inmate safety must be reasonable.").

Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2001) (citing *Liebe v. Norton*, 157 F.3d 574, 578 (8th Cir. 1998) (focus must be on precautions actually taken in light of

suicide risk, not those that could have been taken)); *see also Jackson*, 775 F.3d at 179 (physician's act of prescribing treatment raises fair inference that he believed treatment was necessary and that failure to provide it would pose an excessive risk). While "a prisoner does not enjoy a constitutional right to the treatment of his or her choice, the treatment a prison facility does provide must nevertheless be adequate to address the prisoner's serious medical need." *De'lonta v. Johnson*, 708 F.3d 520, 526 (4th Cir. 2013).

The undisputed record establishes that Hamilton received adequate treatment for the medical complaints he presented to medical staff. To the extent he believed he was entitled to more than the treatment provided, his claim represents a disagreement with the treatment provided to him. Further, the complaint fails to establish that Hamilton suffered a cognizable injury due to the failure to provide him with the treatment of his choice. Hamilton has failed to attribute any deliberate failure to provide him with treatment for a serious medical need by the Defendants who have been served with the complaint, all of whom are correctional employees or municipal entities. The unserved medical care contractor is entitled to dismissal of the claims against it in light of the medical records establishing that Hamilton was provided adequate medical care.

B. <u>Claims against Supervisory and Municipal Defendants</u>

It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983); *see also Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (no respondeat superior liability in a Bivens suit). Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d

228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Hamilton's claims against the Warden, the Sherriff, and any other supervisory officials at WCDC do not directly attribute any actions by those individuals with respect to either his medical care or the conditions of his confinement. Those Defendants are entitled to summary judgment in their favor.

With regard to the Washington County Board of Commissioners and the Sherriff's Department, Hamilton fails to state a claim for municipal liability. In suing a municipal government and agency under 42 U.S.C. § 1983, Hamilton must prove two elements to succeed in this claim. First, he must establish the existence of a constitutional violation on the part of the police officers. *See Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (jury's finding that a police officer inflicted no constitutional injury on the plaintiff removed any basis for municipal liability against city and members of police commission); *Temkin v. Frederick Cty. Comm'rs*, 945 F.2d 716, 724 (4th Cir. 1991) (§ 1983 claim of inadequate training or supervision cannot be established without a finding of a constitutional violation on the part of the person being supervised); *see also Dawson v. Prince George's County*, 896 F. Supp. 537, 540 (D. Md. 1995). Second, Plaintiff must show that any constitutional violations were proximately caused by a policy, custom, or practice of the Defendants. *See Monell v. Dep't of Social Servs. of N.Y.*, 436 U.S. 658, 691, 694 (1978).

Municipal policy arises from written ordinances, regulations, and statements of policy, *id.* at 690; decisions by municipal policymakers, *Pembaur v. Cincinnati*, 475 U.S. 469, 482-83 (1986); and omissions by policymakers that show a "deliberate indifference" to the rights of citizens. *See Canton v. Harris*, 489 U.S. 378, 388 (1989).

Hamilton does not cite any injury he has sustained, nor has he described a constitutional violation that has occurred as a result of a policy, custom, or practice of either the Washington County Board of Commissioners or the Sherriff's Department. The claims against these Defendants must be dismissed.

C. Pendent State Tort Claims

To the extent that Hamilton intended to raise pendent State claims of negligence against the named Defendants, this Court declines to exercise supplemental jurisdiction over those claims. "When, as here, the federal claim is dismissed early in the case, the federal courts are inclined to dismiss the state law claims without prejudice rather than retain supplemental jurisdiction." *Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726-27 (1966).

**CONCLUSION**

Having found no factual basis for Hamilton's claims, Defendants' Motion to Dismiss or for Summary Judgment shall be granted; the complaint as to unserved Defendant "Meritus Medical Staff Correct Solutions" shall be dismissed pursuant to 28 U.S.C. § 1915(e); and to the extent raised, any State law claims are dismissed without prejudice. A separate Order follows.

_April 26, 2019_
Date

_Richard D. Bennett_
RICHARD D. BENNETT
UNITED STATES DISTRICT JUDGE

11